FILED

David L. Weik

P.O. Box 95

Frenchtown, Montana 59834

Tel. 424-333-1893

JUL 29 2024

Clerk, U.S. Courts
District of Montana
Missoula Division

## IN THE UNTED STATES DISTRICT COURT

## FOR THE DISTRICT OF MONTANA

| | | |
|---|---|---|
| DAVID L. WEIK | § | |
| **Plaintiff** | § | CASE NO. |
| | § | CV 24-106-M-KLD |
| VS. | § | |
| | § | |
| JIM ASBY, ET AL, individually; | § | |
| AND; TERESA POSIE, ET AL, | § | |
| individually, AND; T & J WOOD PRODUCTS, | § | |
| ET AL, individually, AND; RYDEL PETERSON, | § | |
| ET AL, individually; AND; | § | |
| DOES I-X; JANE DOES I-X; JOHN DOES | § | |
| I-X; CORPORATION I-X; XYZ | § | |
| PARTNERSHIPS I-X | § | |
| **Defendants** | | |

**TO THE HONOARABLE UNITED STATES COURT DISTRICT JUDGE;**

COMES NOW, DAVID L. WEIK, Plaintiff, and appears Pro Se, in the above-styled and numbered causes of actions, the Complaint, against the Defendants, and complains of JIM ASBY, ET AL, and complains of TERESA POSIE, ET AL, and complains of T & J WOOD PRODUCTS LLC., ET AL, and complains of RYDEL PETERSON, ET AL as Defendants, and for good causes of actions Plaintiff would respectfully show the Court and alleges as follows:

### PARTIES

01. At the time of the offenses complained of, DAVID L. WEIK, was a resident of Missoula County, Montana.

02. Defendant JIM ASBY, was at all times relevant hereto, and at all times mentioned in this Complaint was acting individually. Defendant, Jim Asby, may be served by causing citation and copy of process to be personally served upon him at his place of residence 2372 38th Street, Missoula, Montana, 59801 United States of America, at all times relevant to this Complaint

03. Defendant, TERESA POSIE, was at all times relevant hereto, and at all times mentioned in this Complaint was acting individually. Defendant, Teresa Posie, may be served by causing citation and copy of process to be personally served upon her at her place of residence 13200 Lacasse Lane, Missoula, Montana 59808 United States of America, at all times relevant to this Complaint.

04. Defendant, T & J Wood Products, LLC, was at all times relevant hereto, and all times mentioned in this Complaint, a Limited Liability Corporation. Defendant, T & J Wood Products registered agent, Teresa Posie, may be served upon her at

2.

her place of residence 13200 Lacasse Lane, Missoula, Montana 59808 United States of America, at all times relevant to this Complaint.

05. Defendant, Rydel Peterson, was at all times relevant hereto, and at all times mentioned in this Complaint was acting individually. Defendant, Rydel Peterson, may be served by causing citation and copy of process to be personally served upon him at his place of residence 17050 Scheffer Lane, Frenchtown, Montana 59834 United States of America, at all times relevant to this Complaint.

06. All events complained of herein occurred in Missoula County, Montana.

07. It is believed that all named Defendants were and/or currently reside in Missoula County, Montana.

08. John Does I-X and Jane Does I-X are individuals or are married couples who were the managers, agents, employees of the owners ABC Corporations I-X or XYZ Partnerships, or one or all of the Defendants, and whose identities are presently unknown to the Plaintiff and who individually of the benefit of their marital communities committed some or all of the acts complained of herein.

09. Defendants ABC Corporations I-X and XYZ Partnerships I-X are Montana, foreign, general or limited partnerships who were owners, managers, agents, employers, or employees of one or all of the Defendants, whose identities are presently unknown to the Plaintiff and who committed some or all of the acts complained of herein.

## JURISDICTION AND VENUE

10. Plaintiff's action arises out of Defendants' conspiracy to deprive David Weik (hereinafter "Weik") of his property and Civil Rights, and protections provided under the federal Whistleblower Act.

3.

11. This Court has subject matter jurisdiction over the matter under the Civil Rights Act pursuant **28 U.S.C. § 1343,** federal question subject matter jurisdiction pursuant to **28 U.S.C. § 1343**, federal question subject matter jurisdiction pursuant to **28 U.S.C. § 1331**, 28 U.S.C. § 1332, and has supplemental jurisdiction to **28 U.S.C. § 1367**, and allowing the Court to exercise jurisdiction over state claims since the claims arise of "a claim or controversy" as defined in Article III of the United States Constitution.  Venue is also proper pursuant to Local Rule 3.2(b) of the United States District Court.

12. This is an action for damages exceeding $75,000.00 for violation of civil rights secured to the Plaintiff by TFA 26 U.S.C § 7623(d), the Federal Fair Housing Act 42 U.S.C. § 45, the Social Security Act, and the fourteenth Amendments to the United States Constitution.  In addition, this Court's jurisdiction is founded also in **U.S.C. sec 1337; 15 U.S.C. secs. 15, and** (due process and equal protection clauses, and civil action for deprivation of rights), **1985(3)** (conspiracy to interfere with civil rights), **1988** (proceedings in vindication of civil rights

*13.* Jurisdiction of this Court for the pendant claims is authorized by **F.R.Civ.P. 18(a),** and arises under the doctrine of pendent jurisdiction as set forth in the ***United States Mine Workers v. Gibbs,*** **383 U.S. 715 (1966).**  In the State of Montana, the jurisdiction to hear such cases is placed exclusively in the United States of America District Court of this state.  All parties to this action reside in Montana, United States of America, at all times relevant to this Complaint. There is no other jurisdiction to which a mandatory change of venue would lie. Furthermore, venue is proper in his District under **28 U.S.C. § 1391(b),** because a

*4.*

substantial part of the events giving rise to the claims occurred in this District.

## FACTUAL AND LEGAL BACKGROUND

14. Jim Asby and Teresa Posie is a producer and marketer of bagged firewood and cut and split delivery of firewood to the public at large throughout Missoula County and neighboring counties. Jim Asby and Teresa Posie employed approximately 30 employees for the year 2023.

15. The Plaintiff began his employment early on in or about 2019, as a laborer with A&A Asphalt, owned and operated by the Defendant, Jim Asby, and eventually was later transitioned to work fulltime with T & J Wood Products owned by the Defendants, Jim Asby and Teresa Posie.

16. The Plaintiff excelled in his position and was rewarded with a promotion to yard supervisor by Jim Asby in 2022.

17. The Plaintiff remained in this position until his termination on October 18, 2023.

## FACTS, CONTINUED

18. On or about October 11th, 2023 at approximately 09:30 a.m., the Plaintiff contacted Mike Bartow, with the Montana Department of Labor and Industry, located in Helena, Montana, to report several violations regarding T and J Wood Products, and its business owners Jim Asby, and Teresa Posie.

19. On or about October 11th, 2023, at 10:14 a.m., at the conclusion of Plaintiff's conversation with Mike Bartow, he sent Jeff Garden (inspection supervisor) an email, and stated the following:

**"Hey Jeff,**

**I think I found an uninsured business. Yard foreman (David Wcik) called stating employer wouldn't let him file a claim for chipped tooth. Business is T & J Wood Products at 13503 LaCasse Lane in Missoula. I can't find any insurance and SOS – Secretary of State office shows business as dissolved. IW said owner is Jim Aby and his daughter who does the books lives across the street. States they pay him with a business check and cash but notes he has to turn in time sheets."**

20. On or about October 11th, 2023, the Plaintiff reported issues with, the Montana Department of Revenue, regarding illegal activity regarding tax fraud. Furthermore, the Plaintiff contacted the IRS - Internal Revenue Service to report illegal activity regarding tax fraud.

21. On or about October 18th, 2023, Plaintiff confronted Defendant, Jim Asby at work wanting him to write him a reimbursement check for the $1,200.00 the Plaintiff borrowed to cover a work-related injury he suffered a few months prior while on the job working there onsite for T & J Wood Products.  Defendant Asby refused.

22. The Plaintiff insisted that it was a valid workman's comp claim, that it would have been covered by workman's comp, had Defendant Asby allowed him to file a claim for the injury.  The Defendant said, he didn't care, and wasn't going to write out a check to the Plaintiff, a check for $1,200.00, the Plaintiff borrowed for the injury, that was addressed by the dental office.

23. At that time, Plaintiff told the Defendant, he contacted Montana's Workman's Comp Division, and had found out by Mike Bartow, the Defendant's

**6.**

business, T & J Wood Products company, was dissolved by the State of Montana Corporation Commission, back about two years ago on December 1, 2021. In addition, the Plaintiff conveyed to the Defendant, he still hadn't received requested corrected W2 Forms from the Defendant's business, having already reported the Defendant to Workman's Comp Division regarding workman's comp, did tell the Defendant also, he reported him to the Montana Tax Revenue Department, and also, to the Internal Revenue Service for his failure to provide accurate W2 Forms, and other questionable T & J Wood Products business practices that violated tax laws involving fraud. It was then, the Plaintiff demanded to know from the Defendant, if he had ever been covered by workman's comp, while employed with T & J Wood Products, or if he was covered now.

24. The Defendant refused to answer the workman's comp question about Plaintiff's insurance coverage. Instead, the Defendant walked up to the Plaintiff, face-to-face, and immediately fired him for having reported him to the different taxing agencies and the Montana State workman's comp. office. Furthermore, the Defendant was so angry he immediately demanded the Plaintiff move off the property he had been living in his R.V. there for the past three years.

25. It is a fact; a verbal argument ensued between the Plaintiff and Defendant, and it ended with both parties walking away from each other within moments of the face-to-face verbal conversation

## FACTS, CONTINUE

26. On or about October 19th, the Defendant drove up to the Plaintiff where he was living on property, located at 13503, and demanded to know how many hours he had worked up to this point.

7.

27. The Plaintiff without a word. handed the Defendant a copy of a Mechanics Lien, he filed on both of Defendant's lots, after the previous day's verbal confrontation, and also handed the Defendant Plaintiff's completed current weekly time card.

28. On or about October 21st, within 72 hours of Plaintiff's immediate employment termination by the Defendant, Defendant, Jim Asby, handed the plaintiff a written payroll check, numbered 4775.

29. It is a fact; the Defendant did not at that time pay the Plaintiff with a T & J Wood Products company payroll check, as he had in the past for hours worked by the Plaintiff in previous weeks or with cash up to the day of termination, but with a joint personal checking account check between Jim Asby and Teresa Posie.

## **FACTS CONTINUED,**

30. The Defendant, Jim Asby, listed the property lot, located at 13495 LaCasse for sale, sometime on or around October 1, 2023, where the Plaintiff had been living for the previous three years prior to Plaintiff's employment being terminated by the Defendant. The Defendant then found a prospective buyer for the property lot the Plaintiff lived on. However, prior to the property being placed on the market to be sold, the Defendant told the Plaintiff he could move his residential R.V. trailer to the property he owned, located at 15305 LaCasse, adjacent to 13495 LaCasse to 15305 LaCasse. The Defendant paid an electrician, to install a free standing 20 amp electrical hookup, for the Plaintiff to hook up his residential R.V. trailer to.

**8.**

31. It is a fact, before the Defendant terminated the Plaintiff's employment from T & J Wood Products, Defendants, Jim Asby and Teresa Posie, still owed the Plaintiff for wages, and money for an injury the Plaintiff suffered while on the jobsite.

## FACTS CONTINUED,

32. On or thereabouts of October 30, 2023, Defendant Rydel Peterson (hereinafter referred to as "Peterson") contacted the Plaintiff by telephone. He identified himself as an attorney hired by real estate agent, Carla Hardy, and calling regarding Defendant, Jim Asby. It is fact, Peterson was working for the real estate agent, Defendant Carla Hardy, and not Defendant, Jim Asby. It was a fact; Peterson had never met Defendant, Jim Asby before then.

33. During the telephone conversation, Defendant Peterson instructed the Plaintiff to immediately move off the lot he had been living on for the past three years. Defendant Peterson further stated, he would contact the sheriff's office, if Plaintiff refused to immediately move. The Plaintiff advised Peterson that he had tenant rights under the Landlord Tenant Act. Peterson clearly stated to him that, they don't apply to him (Plaintiff). Then Defendant Peterson told the Plaintiff he was at the lot now. The Plaintiff advised Peterson he, himself, was enroute there.

34. While enroute, the Plaintiff contacted the Missoula County Sheriff's department to inquire if he had rights under the Landlord Tenant Act. In short, the deputy confirmed with the Plaintiff, he had rights under the Act that would protect him. The deputy went on to explain that, he had well established residency, by

9.

living on the property for three years, and that he had been receiving mail at the property, to include having received bank statements at the same address.

35. In short, when the Plaintiff arrived at the property to meet with the Defendant, Peterson admitted he was working for the real estate agent, Carla Hardy, as agent representing Asby, as seller.  Peterson told the Plaintiff he had been hired by her to get the Plaintiff off the property altogether.  Peterson admitted that, they were all "Friends." Meaning, Carla Hardy and Peterson were friends, and that she called him, and was paying him to get the Plaintiff off the property by any means, so the deal could be closed on schedule with the prospective buyers. Meaning, since Peterson was an attorney, the use of his title as an attorney,

36. In scare tactics and with the threat of calling the sheriff's department on the Plaintiff, harassment or by any other means was to be used to quickly get the Plaintiff to move off the property through intimidation, harassment, scare tactics – these were used. It was a situation of "A no holds bar approach" to accomplish this.

37. It is a fact; Asby's lot was listed through MLS for $175,000.00. Defendant, Carla Hardy's commission was a flat $25,000.00.  The buyers made it clear, they were prepared to sign the papers, but didn't want the Plaintiff still living on the property after the signing.

38. It is a fact; the Plaintiff was never under a 30-Day Written Notice to Vacate. He had never been served with a 30-Day Notice to Vacate at any time from the property by Defendant, Asby or by Defendant, Peterson, or anyone else.  After continued harassment by both Defendant Peterson and Defendant Asby, the

**10.**

Plaintiff contacted the Missoula County Sheriff's Department, and deputy Sept contacted Defendant Asby, and specifically told the Defendant he needed to still go through the 30-Day Written Notice for Plaintiff to Vacate. Defendant Asby refused to believe this, explaining to the deputy that, Defendant Peterson assured him he didn't need to, that the attorney could better explain it to the deputy if he would call him. Deputy Sept made it clear Defendant, Jim Asby, was wrong, and was not going to contact the attorney.

## FACTS CONTINUED,

39. The closing date to sign papers between buyers and seller loomed, Carla Hardy stressed and panicked over the possibility of loosing her $25,000.00 commission from the buyer, by backing away from the purchase of the lot altogether.

40. It is a fact, the Plaintiff worked nights, and when off work, during the day he moved his personal property pretty much every day to a storage facility from the property. The problem in moving the two horse trailers and a flatbed trailer, they weren't registered, and could not be moved to a storage lot due to a Montana law, that prohibited the storing of unregistered vehicles/trailers at storage facilities. Defendant, Peterson unaware of this law, as he, too, checked with trailer the storage facilities, and learned of this fact for the first time. To register the trailers required bonding. Since the Plaintiff was sold these trailers without a title, he only he received Bill of Sales from the sellers. In short, the Plaintiff didn't have the immediate funds to pay for the bonds on all three trailers all at once, and therefore, could not move these trailers immediately from the lot.

11.

## FACTS CONTINUED,

41. On or about November 1, 2023, Defendant Peterson sent the Plaintiff a text:

**"Mr. Asby will give you until Monday, November 6th, at 5:00 pm to remove the rest of your personal property from his lot at 13495 Lacasse Lane. If your property is not removed by that time, Mr. Asby will trespass you from the property and will make the necessary arrangements to remove whatever is left of your property."**

42. The Plaintiff again contacted the Missoula County Sheriff's Department, and again reiterated by deputy Shermer, that the Plaintiff was already an established resident of the property, receiving mail through the United States Postal Service there. Therefore, Defendant, Jim Asby, would still need to go through the 30-Day Written Notice Eviction process.

43. It is a fact; the November 6th, 5;00 pm deadline came and went without the Plaintiff being issued a trespass by the sheriff's department, and nothing of Plaintiff's property was removed by anyone other than the Plaintiff himself.

44. It is a fact, on or about November 1st, the day of Defendant Peterson's text threat to the Plaintiff, to remove himself from the property, the listing of the lot at 13495 Lacasse Lane had been removed from the MRMLS (source #30014579 report) (it had been taken off the market).

## FACTS CONTINUED,

45. On or about November 14th, Defendant Asby confronted the Plaintiff and demanded to know if he had a plan (to move). The Plaintiff did have a plan, but it required waiting until two days later, with his nighttime job paycheck, he could pay the bonds for the three trailers to be inspected, and receive plates/registration

**12.**

to move them to a trailer storage facility. It was at that time, Defendant Asby threatened the Plaintiff he would have somebody move his things off the property if he didn't. The Plaintiff asked the Defendant who he was going to have it done by?" The Defendant replied, "Somebody!" the Plaintiff told the Defendant, "It had better be legal."

46. On or about the evening/night of November 15th, while the Plaintiff was at work, working nights, Defendant, Asby, without ever having issued a 30-Day Notice to the Plaintiff to Vacate or a Court Order to remove Plaintiff's property from the lot 13495 Lacasse, Defendant, Asby paid an individual to remove ALL Plaintiffs vehicles; two 4-horse stall hauling trailers, a flatbed trailer, a Ford Explorer, and a 27-foot Jayco R.V. trailer, the Plaintiff had been living in on the property for the past three years, and unlawfully removed them to another property approximately 2 miles away onto someone's land the Plaintiff did not even know. It wouldn't be until November 16th after getting off work, the Plaintiff driving to 13495 Lacasse Lane, as he normally did, would he learn of what Defendant, Asby had done with Plaintiff's property – having removed all trailers and R.V.

47. How the Defendant wouldn't understand, that the Plaintiff would simply accept what was done to him, and his property without being angry, would be a huge underestimation, but a planned move to get the Plaintiff off the land with the concerted efforts of all the Defendant's, so Hardy could collect her $25,000.00 commission, and Defendant, Asby could collect his asking sale price of $150,000.00. Furthermore, Defendant, Asby would seal the deal to rid himself of the Plaintiff by filing a false police report. The Plaintiff was arrested a short time thereafter and taken to the Missoula County Jail. With the Plaintiff in custody and

**13.**

in jail, none of the Defendants expected what would happen next - three days later.

## FACTS, CONTINUED

48. It is a fact; the Plaintiff would make bail within two days, and was released from the county jail the following day (total of three days) later. Upon his release, the Plaintiff would go to inspect the horse trailers, flatbed trailer, the Ford Explorer towed, and the R.V. Upon inspecting the R.V. trailer, he found that two of its windows had been pried out latches broken but no entry inside through them. However, the R.V. trailer passage door lock had been pried and broken, and access was gained inside. The Plaintiff immediately reported the breaking in of the R.V., and an investigation was begun by the Missoula County Sheriff's Department. The Plaintiff, later the next day, was shocked to learn who it was that broke into his trailer. The individual who broke into Plaintiff's trailer was the very individual Defendant, Asby had hired to unlawfully remove all of Plaintiff's trailers and vehicles from the property lot 13495 Lacasse. What was more shocking, was the stolen property belonging to the Plaintiff's -- taken by the individual who broke into Plaintiff's R.V., that property was then taken and given and received by Defendant, attorney, Rydel Peterson. Defendant, Peterson admitted to the investigating deputy, he knew the property belonged to the Plaintiff, and that he knew who broke into the Plaintiff's R.V.

49. On or about November 22, 2023, the Plaintiff was contacted by a federal employee of the United States Postal Service and Told she witnessed the burning of Plaintiff's personal property, at 13495 Lacasse Lane, Missoula, Montana 59808, by Defendant, Jim Asby. The Plaintiff was horrified over the news.

**14.**

## FACTS, CONTINUED

50. On or about November 17th, 2023, Defendant Rydel Peterson, a licensed practicing attorney in Missoula County, orchestrated and participated in the breaking in of Plaintiff's R.V residential 27 foot long, JayCo trailer while it was in Missoula, Montana.

51. On or about November 20th, 2023, the Plaintiff discovered someone had broken into his 27 foot long residential R.V. trailer. The Plaintiff noted two window latches had been destroyed in an attempt to gain access inside the R.V. trailer. Then upon further inspection, the Plaintiff discovered the passage door lock had been destroyed to gain access inside of the trailer. Upon Plaintiff's enter of his R.V. trailer he discovered property missing.

52. The Plaintiff then contacted the Missoula County Sheriff's department to report the break in of his residential trailer. The Missoula County Sheriff's deputy asked the Plaintiff who he thought had anything to with the breaking in of his residential trail. The Plaintiff was adamant that, Rydel Peterson, was involved with the breaking in of his residential trailer, having noted in part what had been stolen from the tailer.

53. Defendant, Rydel Peterson, was contacted by the Missoula Sheriff's Department during the investigation into the breaking in of Plaintiff's residential trailer. Defendant, Rydel Peterson, told the investigating deputy he knew who broke into the Plaintiff's trailer. Defendant, Rydel Peterson, further admitted to being in possession of Plaintiff's property stolen from the trailer.

54. The investigating sheriff's deputy had kept in contact with the Plaintiff, and

**15.**

and missing property. The deputy acknowledged, that at least two people were involved in the break in, and Defendant, Rydel Peterson, admitted to being in possession of Plaintiff's property.

55. The investigating sheriff deputy told the Plaintiff he would submit his findings and police report to the prosecutor's office for prosecution and charges only against the sole primary person/offender of interest, Defendant, Rydel Peterson,

56. The Plaintiff took into account the damage caused by the Defendant, and John Doe, who participated in the break in amounted to several thousand dollars to restore Plaintiff's residential trail to its' original condition prior to the break in by the Defendants.

## FACTS, CONTINUED

57. On or about May 9th, 2024, the Plaintiff filed for retirement with Social Security Administration Office, and it was discovered then, both Defendants, Jim Asby and Teresa Posie failed to pay Plaintiff's social security wages on approximately $70,000.00 in earned wages, that went unreported to, both, the IRS – Internal Revenue Service, and the Social Security Administration over the course of four years of Plaintiff's employment with T & J Wood Products, LLC. The approximate amount of $70,000.00 in earned wages comes from Defendant's failure to report and pay actual social security wages to the IRS – Internal Revenue Service/Social Security Administration, while the Plaintiff worked for T & J Wood Products, LLC. The Defendants, Jim Aby and Teresa Posie's failure to pay social

**16.**

security wages has deprived the Plaintiff the ability to collect in full what would have been paid out to him monthly by the Social Security Administration, had the Defendants paid Plaintiff's social security wages. The Plaintiff was unaware of the amount in theft of social security wages until he visited the Social Security Administration Office on or about May 9th. It was then he learned of the magnitude of the theft upon visiting the Social Security Administration Office. From the Social Security Administration generated spread sheet of reported income to the IRS

58. The Social Security Administration Office printed a spread sheet for the Plaintiff's wages reported to them by the IRS – Internal Revenue Service, for what the Defendants, Jim Asby and Teresa Posie under T & J Wood Products, LLC. And J & N Multi-Services, Inc. had collectively reported the Plaintiff made for each of the four years shown. It should be noted, that J & N Multi-Services, Inc., was owned and operated by the Defendant, Jim Asby.

59. From the tax years 2020, 2021, 2022, and 2023, the Defendants, Jim Asby and Teresa Posie reported to the IRS what they claim the Plaintiff made in earnings working for T & J Wood Products, LLC. It is those figures the IRS then reported to the Social Security Administration. That is where the Social Security Administration Office gets their figures from for social security wages paid.

60. It is a fact; the figures the Defendants reported to the IRS are false for the tax years 2020, 2021, 2022, and 2023. The Plaintiff went from working with A & A Asphalt, owned by Defendant, Jim Asby, which company is a subsidiary of J & N Muti-Services, Inc., to working for T & J Wood Products, Inc. in 2020, and thereafter until his termination.

**17.**

61. There's no possible way the Plaintiff could have sustained his cost of living on the amount of reported earned wages to the IRS by the Defendants, Jim Asby and Teresa Posie. During the tax years 2020, 2021, 2022, the Plaintiff purchased a R.V. trailer, at a cost $4,000.00, and a truck for $2,900.00, and motorcycle for $1,500.00. The combined purchase amounts and the costs of Plaintiff's cost of living expenditures exceed the amount, of monies the Defendants reported to the IRS in Plaintiff's earned wages.

62. After numerous attempts by the Plaintiff, and IRS demands for corrected W2's forms for tax years 2020, 2021, 2022, the Defendants on or May 7th, 2024 sent the Plaintiff a W2 of reported earned wages of $9,797.51 for the tax year 2023. The reported figure of $9,797.51 in Plaintiff's earned wages to the IRS is sent to the Plaintiff late, long after the file due date for filing taxes for the tax year 2023, ranged weekly from $520.00 to $730.00 from January to September then fell off the following weeks in the Plaintiff's employment was terminated on or about October 18th, 2023.

## FACTS, CONTINUED

63. During Plaintiff's employment, starting with A & A Asphalt in 2018, the majority of staff employed by the Defendant's Jim Asby and Teresa Posie were very few Hispanic, African American and Native Americans employees. The few that were hired, the Plaintiff noticed a differential treatment by Defenant, Jim Asby, of them compared to those employees predominately Caucasian.

64. At no time, did the Defendants, Jim Asby, and Teresa Posie ever advance any Native American, African American or Hispanic descent beyond a labor position. In fact; the few that were employed by A & A Asphalt or T & J Wood

**18.**

Products were either fired or quit. Furthermore,

65. when an African America employee on one occasion sustained a hand injury on the jobsite, Defendant, Jim Asby, denied him the ability to file a workman's comp claim, telling the employee he would be responsible for any medical treatment he required. That employee paid all medical expenses out of pocket, and quit his job with T & J Wood Products. A similar injury had occurred previous to this incident involving an employee who was Caucasian, and the Defendant paid all medical bills that involved that on-the-job injury. The Defendant, Jim Asby, ended up firing the remaining Native America and Hispanic employees within a short period of time of their hiring. Similarly, When the Plaintiff sustained an injury on the job, the Plaintiff was summarily denied the ability to file a workman's comp claim.

66. It is a fact; when the Defendant, Jim Asby discovered the Plaintiff, himself was part Hispanic, the Plaintiff noticed an immediate differential treatment while he continued his employment with T & J Wood Products, believing it was racially motivated, subjecting him to treatment that was demeaning. The Plaintiff was denied the ability to file a workman's comp claim for an on-the-job injury that occurred early 2023, that forced him to borrow $1,200.00 dollars to take care of the injury. Other instances carried over regarding the Plaintiff that, in fact, the Defendant, Jim Asby, violated the Plaintiff's civil rights in violation of the Federal Fair Housing Act, and Montana's Land Lord Tenant Act concerning his residency at 13495 LaCasse, Missoula, Montana.

## FACTS, CONTINUED

67. The Plaintiff took up residency there, living on the property for three years.

**19.**

There was no prior or anything thereafter of an arrangement between the Plaintiff and Defendant, Jim Asby, regarding any rent for the Plaintiff to live there, or anything related to working for T & J Wood Products as compensation, that permitted him to live at the property.  Instead, the Defendant took advantage of Plaintiff's residency there, that any customer who came there to purchase firewood, the Plaintiff could assist the customer, whereby the Defendant didn't have to drive over 14 miles to come back to the jobsite where the firewood was kept to assist the customer.  It is a fact, the Defendant, Jim Asby paid the Plaintiff for any time he worked after hours or on the weekend when dealing with a customer/s afterhours or on the weekend when the jobsite was closed.

68. When the Defendant, Jim Asby, learned the Plaintiff was Hispanic early on in 2023, the relationship between Defendant Jim Asby and the Plaintiff drastically changed.  The thing that kept the Plaintiff employed there at T & J Wood Products by the Defendant, was for the fact, Plaintiff's work ethics and skill performance was above-average standard compared to all the other staff employees.

69. When the Defendant put the property up for sale, located at 13495 Lacasse, the Defendant had installed a freestanding 20 Amp outlet at 13503 LaCasse, so the Plaintiff could transfer his residential trailer to the adjacent property located at 13503 Lacasse. The T & J Wood Products jobsite equipment was eventually transferred to the adjacent property there, too.

70. On or about October 11, 2023, the Plaintiff contacted the Montana State Workman's Comp's office, and spoke with Mike Bartow.  The Plaintiff found out through Mike, that the Defendant didn't have workman's comp insurance.

71. The Plaintiff confronted the Defendant about his business being dissolved back on December 1, 2021, and that he didn't have workman's comp insurance on

**20.**

him when he sustained the on-the-job injury,

72. When the Plaintiff told the Defendant, he had reported him, to the Montana State Workman's Comp Dept, and the Montana Dept. of Revenue, and the IRS – Internal Revenue Service, the Defendant terminated the Plaintiff, and demanded he immediately move from the property - the Defendant was furious, believing he had been bested, not by a Caucasian employee, but by a Hispanic.

73. The Defendant had always lumped the Native American, African American and Hispanics as being substandard, non-deserving of any rights at all.

74. It is fact, the Defendant, Jim Asby, found a buyer for the property located at 13495 LaCasse, and the Defendant needed the Plaintiff off the property. Both Defendants, Jim Asby and Rydel Peterson employed abusive tactics to remove the Plaintiff from the property. The Plaintiff contacted the Missoula County Sheriff's department, and told them what the Defendants were doing to him. The deputies told the Plaintiff he was protected under the Montana Landlord Tenant Act. The deputies told the Defendants they had to follow the Landlord Tenant Act regarding the Plaintiff, as he had protective rights under the Act.

## COUNT ONE

### (Retaliation)

75. Plaintiff incorporates each and every paragraph of the Complaint herein by reference.

**Protected Activity – Whistleblower Protection**

76. No employer may discharge or in any other manner retaliate against an

**21.**

employee for engaging in activity protected under TFA – Tax First Act

77. The Plaintiff provided information regarding what he believed violated internal revenue laws or any provision of Federal law relating to tax fraud regarding Defendant, Asby and Defendant, Teresa.

78. On or about October 18th, 2023, the Plaintiff told Defendant, Asby, he reported and provided information to the Internal Revenue Service, and the Montana Tax Revenue Department about his tax fraud activities.  Defendant, Asby was furious.

79. The retaliation by Defendant, Asby was immediate, an adverse action against the Plaintiff because of activity protected by TFA.

**80.** The retaliation by Defendant Asby was then immediate, it was severe, re: the firing of Plaintiff from T & J Wood Products, intimidation, making threats, and ousting of the Plaintiff from his residence of three years at 13495 Lacasse Lane, Missoula, Montana. These acts were in violation of **TFA 26 U.S.C. § 7623(d), and Mont.Admin.R. 24.9.603(a)(b)(c)(2)(a) the burning and/or destruction of Plaintiff's property (b)(c)(d) eviction/housing.**

81. As a result of the actions of Defendants, more particularly Defendant Jim Asby, each of them, Plaintiff is entitled to actual, compensatory, consequential and punitive damages.

## COUNT TWO

### (Discrimination)

It is unlawful for any person or other entity to discriminate any person because of race, color, religion sex, handicap, familial status, or national origin protected by the Federal Fair Housing Act, and the Montana Landlord Tenant Act

22.

The Defendant, Jim Asby, and Defenant, Rydel Peterson conspired together and did violate Plaintiff's rights under the Federal Fair Housing Act, and the Montana Landlord Tenant Act, and did internally subvert the rights and privileges afforded the Plaintiff under the United States Constitution and by the Montana Landlord Tenant Act, in furtherance to deny the Plaintiff these protections that prohibits racial discrimination and/or other rights afforded him

WHEREFORE, Plaintiff demands judgement for the violation of the Federal Fair Housing Act, and the Montana Landlord Tenant Act against Defendants, Jim Asby and Rydel Peterson jointly, and severally, for actual, general, special, compensatory damages in the amount of $1,000,000.00, and further demands against Defendants, Jim Asby and Rydel for punitive damages in an amount to be determined by the jury, plus pre and post judgement interest, the cost of action, including attorney's fees, and such other relief deemed to just, fair, and appropriate.

## COUNT THREE
## (VIOLATION OF THE MONTANA
## WRONGFUL DISCHARGE FROM EMPLYMENT ACT)

82. An employer needs a good cause to terminate an employee in Montana. An employer in Montana cannot terminate an employee without cause or for having reported the employer to state and\or federal agencies for illegal activity involving tax fraud.

83.Jim Asby terminated the Plaintiff in violation of Montana's Wrongful Discharge from Employment Act ("WDEA").

84.Jim Asby's wrongful termination of the Plaintiff has caused him to sustain monetary damages for which he is entitled to an award of monetary damages as

**23.**

provided by the WDEA.

WHEREFORE, Plaintiff demands judgement for the violation of WDEA against Defendants, Jim Asby and Teresa Posie jointly and severally, for actual, general, special, compensatory damages in the amount of $1,000,000.00, and further demands against Defendants, Jim Asby and Teresa Posie for punitive damages in an amount to be determined by the jury, plus pre and post judgement interest, the cost of this action, including attorney's fees, and such other relief deemed t be just, fair, and appropriate.

## COUNT FOUR

### (Defamation)

85. Plaintiff incorporates each and every paragraph of the Complaint herein by reference.

86. On November 16, 2023, the Defendants, and each of them, particularly Defendant Jim Asby, repeatedly made false statements, and again thereafter, in a TOP – Temp. Order of Protection filing, made false statements about the Plaintiff or statements that placed the Plaintiff in a false light and/or conspired to do so.

87. Defendants, each of them either knew the statements were false, acted in a reckless disregard of these matters, or acted negligently in failing to ascertain the truth or falsity of the statements.

88. Defendants, and each of them, made statements that impeached the honesty, integrity, virtue or reputation of Plaintiff, or brought Plaintiff into disrepute, contempt, or ridicule.

89. Defendants, and each of them published the statements with the intention of damaging Plaintiff's reputation and business opportunities.

90. As a result, the false statements, Plaintiff suffered harm to his reputation,

**24.**

Economic condition.

91. As a result of the actions of Defendants, each of them, Plaintiff is entitled to compensatory, consequential and punitive damages.

## COUNT FIVE

### (Harassment)

92. Plaintiff incorporates each and every paragraph of the Complaint herein by reference.

93. Defendants, and each of them, particularly, Defendants Jim Asby, Defendant, and Defendant Rydel Peterson, committed a series of acts over a period of time, individually and in concert, with the intention of causing Plaintiff to become seriously alarmed, annoyed or harassed.

94. As a result of the actions of Defendants, each of them, Plaintiff is entitled to compensatory, consequential and punitive damages.

**WHEREFORE**, Plaintiff demands judgement for the violation of his civil rights against all of the Defendants jointly and severally, for actual, general, special, compensatory damages in the amount of $1,000,000.00 and further demands against all Defendants, jointly and severally, for punitive damages in an amount to be determined by the jury, plus pre and post-judgment interest, the cost of this action, including attorney's fees, as provided by **42 U.S.C. §1988**, and such other relief deemed to be just, fair, and appropriate.

**25.**

## COUNT SIX

### (Violation of 42 U.S.C. 1985(3) (Conspiracy)

**WHEREFORE**, Plaintiff ask for judgment against Defendants for actual damages, punitive damages, pre and post-judgment interest, the cost of suit, reasonable attorney's fees, as provided by **42 U.S.C. §§ 1985** and **1988**, and all other relief the Court Deems appropriate.

## COUNT SEVEN

### (Negligent Infliction of Emotional Distress)

95. All prior allegations are repeated ad realleged by Plaintiff and incorporated by reference with the same force and effect as if herein set forth.

96. The Defendants acted intentionally or recklessly when they violated Plaintiff's Constitutional rights. The Defendants' conduct was extreme and outrageous. The Defendants' conduct was directed at the Plaintiff or at third person. The Defendants' conduct proximately caused the Plaintiff emotional distress, and the emotion suffered by the Plaintiff was severe. Furthermore, the Defendants must have contemplated the harm that the Plaintiff would endure from the reality of incarceration and possibility of being incarcerated in the future for false criminal charges. The Defendants' knew that the Plaintiff was peculiarly susceptible to emotional distress by the thought of being incarcerated/future incarceration for an unknown amount of time on false charges. The Plaintiff has suffered mental anguish by Defendant Jim Asby's burning of Plaintiff's personal property. The Plaintiff has been harmed by intentional infliction of emotional distress by the Defendants, and hereby sues for recovery of his damages.

**26.**

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully prays the Court grant him the following relief as against the Defendants Jim Asby, Teresa Posie, T & J Wood Products, Carla Hardy, and Rydel Peterson, to-wit:

## COUNT EIGHT

### (Violation of the Social Security Act)

97. The Defendants, Jim Asby, and Teresa Posie, knowingly did fraudulent file false report wage earnings to the IRS - Internal Revenue Service regarding Plaintiff's earned wages for the tax years, 2020, 2021, 2022, and 2023.

98. The Plaintiff requested several times for the Defendants to submit corrected W2's to the Plaintiff for the tax years 2020, 2021, 2022, and 2023.

99. The Defendants failed to forward corrected W2's to the Plaintiff.

100. The IRS – Internal Revenue Service sent several demand letters to the Defendants, requesting corrected W2's regarding the Plaintiff. However, neither Defendant responded to the demand letters sent from the IRS.

101. It is unlawful for the Defendants to make and/or file/report fraudulent statements regarding employ wage earnings.

102. The Defendants, Jim Asby and Teresa Posie failed to pay the total correct Plaintiff wage earning taxes for the tax years 2020, 2021, 2022, and 2023.

103. The Defendants failed to report $70,000.00 of Plaintiff's wage earnings for the tax years 2020, 2021, 2022, and 2023.

104. Defendants failure to forward Plaintiff's collected taxable wage earnings to the IRS, has deprived the Plaintiff the ability to receive full benefit

**27.**

payments from the Social Security Administration for retirement.

105.    Defendants failure to forward taxes collected of the Plaintiff's caused him to sustain monetary damages for which he is entitled to an award of monetary damages as provided by the Social Security Act.

WHEREFORE, Plaintiff demands judgement for the violation of the Social Security Act against Defendants, Jim Asby and Teresa Posie jointly and severally, for actual, general, special, compensatory damages in the amount of $1,000,000.00, and further demands against Defendants, Jim Asby and Teresa Posie for punitive damages in an amount to be determined by the jury, plus pre and post judgement interest, the cost of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate.

A. General damages in the amount to be found by the trier of fact, but in an amount not less than $1,000.000.00;

B. Special damages in the amount to be found by the trier of fact, but in an amount not less than $1,000.000.00;

C. Exemplary damages in an amount not less than twice the amount, of actual damages, both in general and special, for the sum not less than $3,000,000.00;

D. Prejudgment interest at the maximum rate permitted by law;

E. Post Judgment interest at the maximum rate permitted by law;

F. Attorney's fees as and if permitted by law;

G. Cost of Court;

**28.**

H. And such further relief, at law and in equity, to which the Plaintiff may be justly entitled.

Respectfully Submitted:

DATED: July 26, 2024

By: _____

David L. Weik – Pro Se

**29**